UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,

                                      Plaintiff,

                                                                         <u>DECISION AND ORDER</u>

                                                                          10-CR-6116L

              v.

WARREN LOVE,

                                      Defendant.
_____

       Defendant Warren Love was indicted in a seven-count superseding indictment with several drug trafficking and firearm-related offenses. Count 1 was a narcotics conspiracy count. Counts 2-4 related to the use of, and items seized from, a downstairs rear apartment (hereinafter "downstairs apartment") at 399 Lake Avenue, Rochester, New York. Count 2 charged the defendant with possession of cocaine base with the intent to distribute. Count 3 charged him with using the downstairs apartment to manufacture, distribute and/or use a controlled substance, and Count 4 charged him with possession of a firearm in furtherance of one or both of those crimes. Counts 5 and 6 of the superseding indictment related to the use of, and items seized from, an upstairs rear apartment (hereinafter the "upstairs apartment") at the same address. Count 5 charged the defendant with the use of the upstairs apartment to manufacture, distribute and/or use a controlled substance, and Count 6 charged him with possessing a firearm in furtherance of that crime.

       Following a jury trial, Love was convicted on six counts.[1] He now moves to overturn that verdict on multiple grounds. First, defendant moves, by counsel, pursuant to Fed. R. Civ. Proc. 29,

---

[1] Count 1, the conspiracy count, was dismissed on the morning trial commenced at the request of the Government.

for reversal of the jury's verdict on counts 5 and 6 relating to the upstairs apartment, contending that there was insufficient evidence to convict. (Dkt. #158). Second, defendant moves *pro se* to set aside the verdict on the remaining counts as to the downstairs apartment (Counts 2, 3 and 4) on the basis of insufficient evidence, and for a new trial, arguing that his counsel rendered ineffective assistance, principally because he failed to call and offer testimony from a particular witness. (Dkt. #161, #164). Finally, defendant moves (Dkt. #160) by counsel for reconsideration of the Court's pretrial ruling on defendant's prior motions to dismiss some counts in the superseding indictment.

For the reasons that follow, defendant's motion to overturn the jury's verdict as to Counts 5 and 6 of the superseding indictment (Dkt. #158) is granted. Defendant's motions for reconsideration, to set aside the verdict on Counts 2, 3 and 4, and/or for a new trial, are denied (Dkt. #160, #161, #164).

## DISCUSSION

### I. Counts 5 and 6 of the Superseding Indictment

Counts 5 and 6 charged the defendant with using or maintaining the upstairs apartment in the subject building for the purpose of manufacturing, distributing or using a controlled substance, and with possession of a firearm that was located in that apartment, in furtherance of the drug trafficking offense. Defendant contends that no rational juror could have found beyond a reasonable doubt that the defendant was so engaged. I agree.

Fed. R. Civ. Proc. 29 provides that a district court shall enter a judgment of acquittal for "any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Civ. Proc. 29. However, a court deciding such a motion must "avoid usurping the role of the jury." *United States v. Jackson*, 335 F.3d 170, 180 (2d Cir. 2003). The Court must therefore consider the evidence in the light most favorable to the Government and to draw all permissible inferences in its favor. *See United States v. Aleskerova*, 300 F.3d 286, 292 (2d Cir. 2002). Nonetheless, when the evidence,

viewed in favor of the prosecution, at best "gives equal or nearly equal circumstantial support to a theory of guilt and a theory of innocence . . . a reasonable jury must necessarily entertain a reasonable doubt." *United States v. Cassese*, 428 F.3d 92, 103 (2d Cir. 2005) (internal quotations omitted), *citing United States v. Glenn*, 312 F.3d 58, 70 (2d Cir. 2002). In applying these principles to assess the proof adduced at trial, the Court must consider "pieces of evidence . . . not in isolation but in conjunction." *United States v. Miller*, 116 F.3d 641, 676 (2d Cir. 1997).

The key facts relating to Counts 5 and 6 are uncontested. The upstairs apartment at 399 Lake Avenue, Rochester, New York – upon which Counts 5 and 6 were based – was rented, along with the downstairs apartment upon which Counts 2-4 were based, by Tina Holley, a girlfriend of the defendant who had also been a codefendant and had pleaded guilty prior to defendant's trial.

Defendant was arrested when law enforcement officers executed a search warrant for the premises. At the time of his arrest, defendant was found standing in a common hallway of 399 Lake Avenue, in or near the doorway to the downstairs apartment. On that day, there was no evidence that Love was in the upstairs apartment. The only persons found in the upstairs apartment at the time of the search were Love's son and Holley's daughter, both aged 4 or 5 years old.

There was evidence, however, that was presented from which a jury could infer that Love had been present in the upstairs apartment on prior occasions. Love's cellular telephone was found in the downstairs apartment. The Government was able to extract two images from that telephone and both appear to contain images of Love either standing or sitting in the upstairs apartment.

At the time of the arrest and search of the upstairs apartment, no drugs, manufacturing ingredients or money were found. Although a rifle was recovered, it was secreted beneath the sofa and not in plain view.

There were some items found in the upstairs apartment that could be described as drug paraphernalia: an empty beaker, digital scale, plate and some empty plastic baggies. In addition, there was a monitor connected to a surveillance system. Items relating to Love were also found, including some mail addressed to Love at his residence on Fulton Avenue. A key ring, recovered

in the downstairs apartment, included keys to both the downstairs and upstairs apartments, as well as the Fulton Avenue address.

Clearly, the evidence was sufficient for the jury to have concluded that the defendant had access to, and had previously been present in, the upstairs apartment. But, the crime charged is not that Love was merely "present" in the subject premises, but that he engaged in particular illegal conduct: the use or manufacture of drugs. Mere presence is not enough to convict.

It is true that a conviction for maintaining a premises for the use, manufacture or distribution of drugs does not require that a defendant reside at the location, or that drugs be found there, *United States v. Snow*, 462 F.3d 55, 71 (2d Cir. 2006), but a defendant's mere presence in a place where such activities have occurred, without more, is insufficient to support a conviction. *See generally United States v. Navedo*, 443 F. Supp. 2d 431, 436 (W.D.N.Y. 2006) (no rational jury could find that defendant knowingly, constructively possessed drugs found hidden in a house, notwithstanding defendant's unquestioned presence in a known drug house replete with evidence of drug trafficking, including surveillance cameras, plastic baggies, other drugs and drug processing accouterments , where the drugs at issue were not in plain sight, no large quantity of cash or drugs was found on the defendant, and defendant was not an owner or occupant of the house). Defendant may have been present in the upstairs apartment, but there was no evidence that he resided there and insufficient evidence that he, as opposed to the tenant, Tina Holley, was manufacturing or distributing drugs there.

As such, while the evidence was sufficient for the jury to have reasonably inferred that the defendant had access to the upstairs apartment, and that on the day of the search, had likely placed his son there, there was insufficient evidence of drugs or drug manufacturing, use or distribution present within the upstairs apartment, and more specifically, insufficient evidence of such activity by defendant in that apartment, for the jury to have concluded that the defendant and not Holley had used or maintained that particular apartment for the purpose of manufacturing, using or distributing

a controlled substance, as charged in Count 5 of the superseding indictment.[2] As such, there was also insufficient evidence for the jury to conclude that Love possessed the loaded firearm that was hidden in that apartment "in furtherance" of such a crime, as charged in Count 6.

I therefore grant the portion of defendant's motion under Fed. R. Civ. Proc. 29 which seeks acquittal on Counts 5 and 6 of the superseding indictment.

Defendant also requests reconsideration of the Court's prior determination that the upstairs and downstairs apartments are separate premises, for which separate offenses may be charged. Because I conclude that there was insufficient evidence to support the jury's verdict as to the counts involving the upstairs apartment, thereby bringing about the same result defendant seeks in the motion for reconsideration, I deny that portion of the motion for reconsideration as moot.

Nevertheless, upon review of the evidence submitted at trial concerning the possible use of the upstairs and downstairs apartments in concert, the Court has come to question its prior determination that the upstairs and downstairs apartments were, as a matter of law, two separate premises meriting separate counts in the indictment with drastically heightened penalties upon conviction. Were the Court to accept the Government's position that the jury was entitled to rely on the evidence found in the *downstairs* apartment to conclude that the upstairs and downstairs apartments were used or maintained *together* for drug trafficking, the same result would be achieved: the Court would conclude that to the extent that the evidence showed that the apartments were used in conjunction with one another, then they are in fact, one premises for purposes of the superseding indictment. The Court would then reconsider and reverse its prior determination on the basis of the

---

[2] The evidence at trial differed from what was anticipated before trial because at the last minute the Government abruptly elected not to call Tina Holley, the codefendant who had pleaded guilty and had been prepared to testify about Love's activities in and around the two apartments. That decision by the Government caused it to move to dismiss Count 1 of the superseding indictment, which had charged the defendant with membership with Holley in a drug trafficking conspiracy. It was anticipated that Holley would provide detailed testimony about her activity, and Love's, at the 399 Lake Avenue premises. The jury of course never had that testimony and, therefore, the Government's case suffered as a result.

new evidence presented at trial, and Courts 5 and 6 would still be dismissed, as duplicative and/or multiplicitous.

>    **II.   Counts 2, 3 and 4 of the Superseding Indictment**

Defendant also moves, *pro se*, for acquittal on Counts 2, 3 and 4 of the superseding indictment. In contrast to the dearth of evidence supporting defendant's conviction on Counts 5 and 6, I find that there was a significant amount of evidence to support the jury's verdict on Counts 2, 3 and 4 of the superseding indictment. These charges relate exclusively to the *downstairs* apartment rented by Holley.

It is undisputed that on the day of his arrest, defendant was found downstairs, in or near the doorway to the downstairs apartment. Inside the downstairs apartment, officers found an unloaded handgun on the living room coffee table in plain view, a bulletproof vest next to the living room sofa, a man's hooded sweatshirt jacket in the bedroom which had been layered over a second bulletproof vest, a loaded handgun inside a pocket of the sweatshirt, ammunition, United States currency, a digital scale, ziploc baggies, a glass beaker, boxes of baking soda (an ingredient commonly used in the manufacture of crack cocaine), two pieces of mail addressed to the defendant including a Sprint cellular telephone bill, a Sprint cellular phone containing pictures of the defendant, an I-phone later found to belong to Holley, a set of keys, defendant's shoes (defendant was shoeless at the time the search was initiated), 19.9 grams of cocaine base, 16 baggies each containing a quantity of crack cocaine (aggregating 2.4 grams), and a ziploc bag containing 82.2 ounces of marijuana.

Several of the seized items, such as the cocaine base, marijuana, baggies, currency, and the keys to the downstairs apartment were sitting openly on or near the bed in the downstairs apartment's one bedroom. The cocaine base had been placed on a plate on the bed alongside some empty ziploc baggies and the 16 baggies containing crack cocaine.

The jury could have reasonably inferred that the proximity of these items suggested that someone intended to prepare the drugs for distribution, and was already engaged in doing so, at the time the police arrived. On the bed alongside the plate and baggies was the set of keys that included keys to the downstairs apartment, as well as keys to defendant's own residence. Also inside the apartment was a pair of defendant's shoes, which the jury could reasonably have inferred defendant had worn into the downstairs apartment that day and removed, since defendant was barefoot at the time of his arrest, no other shoes belonging to defendant were located, and defendant retrieved and donned that pair of shoes to wear when he left the house in custody. Defendant was found in or near the doorway to the downstairs apartment, had unrestricted access to it, and was the only adult present in or near the downstairs apartment at the time the search was made.

Based upon this and other evidence, the jury could reasonably have concluded that at or around the time of the search, the defendant had been present in the bedroom of the downstairs apartment, actively engaged in using that premises for the manufacture, use or distribution of a controlled substance, that he possessed the cocaine base with the intent to distribute it, and that he possessed some or all of the firearms and/or ammunition that were found in that apartment (most of which were in plain view) in furtherance of one or both of those crimes. As such, defendant's motion for acquittal on Counts 2, 3 and 4 of the superseding indictment is denied.

### III. Ineffective Assistance of Counsel

Defendant also seeks to set aside the verdict on the grounds that he received ineffective assistance of counsel, due to counsel's decision not to call a particular witness. To succeed on such a claim, a petitioner must demonstrate that: (1) counsel's representation fell below an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's errors, the outcome of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687-94 (1984). Generally, a "failure to call a witness for tactical reasons of trial strategy does not

satisfy the standard for ineffective assistance of counsel." *United States v. Eyeman*, 313 F.3d 741, 743 (2d Cir. 2002), *citing United States v. Luciano*, 158 F.3d 655, 660 (2d Cir. 1998).

Here, defendant contends that he requested, but his counsel refused, to call Holley's cousin, Sadiya Curtis, as a trial witness. He contends that Curtis would have testified that she was "present" in the downstairs apartment and "babysitting" at the time of defendant's arrest, and that defendant "did not have anything [to] do with the activity or possession[s] in the household of Tina Holley." (Dkt. #161, #164 at 15). Initially, to the extent that the proffered testimony concerning the defendant's knowledge of, and participation in, drug trafficking activities would necessarily have been based on hearsay and/or speculation, it would have either been inadmissible, or of markedly limited value. It is unclear whether Curtis would have testified that she was present at 399 Lake Avenue at any point prior to the execution of the search warrant, although it is undisputed that she was there at or near the time of defendant's arrest, and took custody of Holley's minor daughter. If she wasn't, then she had no personal knowledge of his activities at that place and time. However, to the extent that Curtis's statement that she "was babysitting" suggests that she was prepared to testify that she had been present at the house and was babysitting the children in the upstairs apartment *immediately prior* to defendant's arrest, such testimony would have had the potential to implicate rather than exonerate the defendant, by eliminating one of the few plausible explanations for his presence in the building at the time the search warrant was executed, outside of participation in drug trafficking activities: keeping an eye on the children. Regardless of how Curtis's statements are interpreted, there is simply no evidence that counsel failed to properly interview or investigate her proffered testimony, or that her testimony could otherwise have exculpated defendant or provided him with an alibi, such that the trial's outcome might have been altered. *See e.g.*, *Bierenbaum v. Graham*, 607 F.3d 36, 55 (2d Cir. 2010) (a decision not to call a witness was "within the range of acceptable strategic and tactical alternatives" for the defendant's counsel, and cannot form the basis for an ineffective assistance claim).

It is clear from the record that counsel was aware of the witness, and made the strategic decision not to call her in spite of defendant's protestations to the contrary. As such, I find that the defendant has failed to show that his counsel's strategic decision not to call Curtis as a witness fell below an objective standard of reasonableness, and his motion for a new trial based on the ineffective assistance of counsel is denied.

## CONCLUSION

For the foregoing reasons, defendant's motion for acquittal on Counts 5 and 6 of the superseding indictment (Dkt.#158) is granted, and defendant is therefore entitled to a judgment of acquittal as to the jury's verdict finding him guilty on Counts 5 and 6 of the superseding indictment. Defendant's motions for acquittal on Counts 2-4 and/or for a new trial based on ineffective counsel (#161, #164), and defendant's motion for reconsideration of his pretrial motions (Dkt. #160) are denied.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
April 16, 2013.